

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-18-2008

# Ismailanji v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3421

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

## Recommended Citation

"Ismailanji v. Atty Gen USA" (2008). *2008 Decisions.* Paper 519.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/519

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-3421
_____

ARTAN ISMAILANJI,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A78 698 107)
Immigration Judge:  Honorable Miriam Mills

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)

September 10, 2008

Before: BARRY, SMITH and HARDIMAN, <u>Circuit Judges</u>

(Opinion filed: September 18, 2008)
_____

OPINION
_____

PER CURIAM

Artan Ismailanji petitions for review of a Board of Immigration Appeals ("BIA")

decision dismissing his appeal of the denial of his applications for asylum, withholding of

removal, and relief under the Convention Against Torture ("CAT"). We will deny the petition for review.

Ismailanji is a native and citizen of Albania. He arrived in the United States in 1999 through the Visa Waiver Pilot Program using a fraudulent passport. The Immigration and Naturalization Service referred the matter to the Immigration Court pursuant to 8 C.F.R. § 208.2(b) to adjudicate his applications for asylum, withholding of removal, and relief under the CAT.

Ismailanji testified before an Immigration Judge in New York that he left Albania because his life was in danger on account of his active membership in the Democratic Party. Ismailanji testified that his first problem occurred on February 15, 1997, at a party rally. Masked people arrived, and he and two others were taken away in a van, beaten, and threatened over a 12-hour period. Ismailanji further testified that on June 18, 1997, he helped organize a rally attended by approximately 1,000 people. He stood behind the podium where the President of Albania spoke. According to Ismailanji, gangsters affiliated with the Socialist Party arrived and fired guns. The local police fled, and the national guard took the President away. The gangsters took him and four others, held them for half a day, and then released them.

Ismailanji also testified that on June 29, 1997, while working at the polls on election day, masked men took him and another party member away. He was held for two hours, and then thrown out of the car. Ismailanji then learned that the Socialist Party won

2

the election.  He stated that in July 1998 he was arrested at home, taken to a police station, and beaten until he was unconscious.  A policeman told him that he should not participate in political activities.  After his release, Ismailanji did not engage in any political activities.  Ismailanji stated that he had also received anonymous phone calls and that people had shot at his house.

Ismailanji left Albania in November 1998 and went to Bulgaria and Macedonia.  He sought asylum at the United States embassies apparently without success.  Ismailanji returned to Albania because he had no place to go.  He received a letter from the prosecutor's office requiring that he appear in court for questioning related to recent demonstrations.  Ismailanji did not appear because he was afraid.  He went to his aunt's house, where he stayed for five months.  Ismailanji went back and forth between Albania and other countries several times before arriving in the United States in July 1999.

The Immigration Judge made an adverse credibility finding based on inconsistencies between Ismailanji's testimony and his asylum application regarding the events that occurred on June 18, 1997.  In his asylum application, Ismailanji stated that he had attended a meeting at a Democratic Party family's home, and that the President was there.  He stated that several cars circled the house, shot into the air, and many party members were injured.  The police came and fled with the President.  The Immigration Judge stated that Ismailanji did not testify that the events on this date occurred in a house, but at a rally.  Ismailanji also wrote in his application that there were eight hostages, but

3

he testified that there were five.

The Immigration Judge also noted that Ismailanji wrote that the masked men took the hostages to an unknown destination, that the police rescued them with ground forces and helicopters, that a police officer was killed, and that another was captured, tied up, and burned alive. Ismailanji, however, testified that the captors simply released him and the other hostages. The Immigration Judge found the references to ground forces and helicopters implausible, and stated that the inconsistencies were so great that he could not credit anything else Ismailanji had said. The Immigration Judge noted that the inconsistency was the most outrageous he had seen in 14 years on the bench.

Ismailanji appealed, and the BIA vacated the Immigration Judge's decision and remanded the case for further proceedings and a new decision. The BIA explained that, although the Immigration Judge had accurately described the inconsistencies in the evidence, the Immigration Judge did not allow Ismailanji to explain them.

Ismailanji requested a change of venue, and an Immigration Judge in Philadelphia ("IJ") heard the matter on remand. Ismailanji explained that the inconsistencies were due to the error of either the lawyer who prepared the asylum application or the translator. Ismailanji stated that it appeared that one or the other had mixed together the events that occurred in the town square with events that occurred later in the day at the house. The IJ faulted Ismailanji for failing to get the notes that he had given his former attorney, and concluded that the differences between the two versions were too stark to be attributable

4

to a translation error. The IJ made an adverse credibility finding and concluded that Ismailanji had not established past persecution.

The parties also provided evidence of current country conditions in Albania, and the IJ found Ismailanji not credible as to why he believed that he would still be in danger if he returned to Albania given that the Democratic Party was then in power. Ismailanji had stated that the threats were still valid, and that the Democratic and Socialist Parties remained in a silent war. The IJ noted that Ismailanji provided no documentary evidence to support his opinion, and that news articles established that the United States found the shift in power to be a success for the democratic process. The IJ further noted that, even before the elections, the 2004 Department of State Profile of Asylum Claims and Country Conditions ("2004 Profile") reported no major outbreaks of political violence since 1998, and that the major political parties had not engaged in abuse or coercion against their political opponents. Thus, the IJ concluded that Ismailanji did not have a well-founded fear of harm based on his Democratic Party membership in light of the changed country conditions.

The BIA dismissed Ismailanji's appeal. Assuming that Ismailanji was credible and that he established past persecution, the BIA concluded that the IJ correctly found that the presumption of a well-founded fear of persecution was rebutted based on a fundamental change in circumstances in Albania since Ismailanji left the country. The BIA noted that the Department of State Country Report, published in 2005, reflected that

the Socialist and Democratic Parties were the two largest parties in Albania, and that the Democratic Party was in power. The 2004 Profile noted that, although serious political repression existed in the past, there were no indications of systemic political persecution, or that the Socialist Party was engaged in a pattern of violent behavior against its opponents. The BIA also decided that Ismailanji failed to meet the higher burden of proof required for withholding of removal and CAT relief. This petition for review followed.

In his brief, Ismailanji primarily challenges the IJ's adverse credibility finding. The BIA, however, assumed that Ismailanji was credible, and that he established past persecution. The BIA dismissed Ismailanji's appeal on the ground that changed country conditions rebut a presumption of a well-founded fear of future persecution. We will address Ismailanji's arguments to the extent they challenge this conclusion. Ismailanji also contends that we must review the IJ's decision because the BIA dismissed his appeal without providing an independent analysis. This contention lacks merit. The BIA's decision reflects that the BIA did not adopt or defer to the IJ's decision, and that it provided its own analysis.

Ismailanji asserts that the Government provided two documents to establish a fundamental change in circumstances – the 2004 Profile and a 2005 news article on the Albanian elections. Ismailanji argues that the news article simply reports that a new government headed by the Democratic Party was sworn in, and does not address political

violence.  He also argues that the 2004 Profile predates the elections and only establishes a slight decrease in documented political persecution.  Ismailanji also contends that insufficient weight was given to the 2004 U.S. Department of State Report, which evidences persecution.

There is substantial evidence in the record supporting the BIA's conclusion that Ismailanji does not have a well-founded fear of persecution due to changed country conditions.  As the BIA noted, not only is Ismailanji's own political party in power, but the 2004 Profile provides that there were no indications of systemic political persecution, or that the Socialist Party was engaged in a pattern of violent behavior against its opponents.  Ismailanji has not identified any evidence compelling a contrary conclusion. See Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001) (explaining that, under the substantial evidence standard of review, the BIA's findings must be upheld unless the evidence not only supports a contrary conclusion, but compels it).  The 2004 U.S. Department of State Report reflects human rights abuses by the police, but these abuses were not reported to be of a political nature.  Ismailanji's father provided a declaration in 2002 stating that people came to his home looking for Ismailanji after he left, and that he was threatened in April 2000, but there was no evidence at Ismailanji's 2005 hearing suggesting that such threats were ongoing, and the 2004 Profile provides that there was no indication that Socialist Party members engage in such behavior.

Ismailanji also argues that, even if the Government established a fundamental

change in circumstances, the regulations allow a grant of asylum based on a reasonable probability of other serious harm. See 8 C.F.R. § 208.13(b)(1)(iii). Ismailanji asserts that he established such a possibility based on his testimony that the Socialist Party would continue to target him, and that the elections in Albania were superficial. This argument, however, appears to be the same as his political persecution claim. We agree with the Government that Ismailanji has not shown that he would suffer other serious harm.

Finally, Ismailanji argues that the IJ failed to adjudicate his applications for withholding of removal and relief under the CAT. The IJ, however, denied "all relief" based on her adverse credibility finding and finding of changed country conditions, and ordered that Ismailanji's request for asylum and withholding of removal, including under the CAT, be denied. 11/19/05 IJ Dec. at 8. The BIA also rejected these claims.[1]

Accordingly, we will deny the petition for review.

---

[1] Although Ismailanji does not make the argument, the BIA erroneously reasoned that it followed from his failure to show a well-founded fear for purposes of asylum that he did not meet his burden of proof for purposes of protection under the CAT. See Zubeda v. Ashcroft, 333 F.3d 463, 476 (3d Cir. 2003) (noting rejection of asylum claim does not control analysis of claim for relief under the CAT). However, there is no evidence in the record supporting a claim that Ismailanji will more likely than not be tortured in Albania.